IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

S-TRONIX,

        Plaintiff,

                              CV 08-272-PK

v.                                OPINION AND ORDER

SUBMEDIA, LLC;

        Defendant.

PAPAK, Magistrate Judge:

       This action was filed against defendant/counter-claimant Submedia, LLC, by plaintiff/counter-defendant S-Tronix on March 4, 2008, raising a single claim for breach of contract. On April 2, 2008, Submedia answered S-Tronix' complaint and filed a counterclaim, likewise for breach of contract. This court has jurisdiction over the parties' dispute pursuant to 28 U.S.C. § 1332, based on the diversity of the parties' citizenship.

Page 1 - OPINION AND ORDER

Now before the court are S-Tronix' motion for summary judgment (#13) and Submedia's motion for summary judgment (#17). I have considered the parties' motions, oral argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, S-Tronix' motion is granted and Submedia's motion is denied.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). The substantive law governing a claim or defense determines whether a fact is material. *See Miller v. Glenn Miller Prod., Inc.,* 454 F.3d 975, 987 (9th Cir. 2006).

In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See*, *e.g.*, *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the non-moving party. *See* Fed. R. Civ. P. 56; *see also*, *e.g.*, *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136

(9th Cir. 2001). Summary judgment, of course, may not be granted where the court finds unresolved issues of material fact, even in situations where the cross motions allege that no disputed facts exist. *See id.*

## FACTUAL BACKGROUND

On June 28, 2005, S-Tronix entered into a Technology Purchase Agreement (the "TPA") with In-Focus Corporation, pursuant to which S-Tronix agreed to sell, and In-Focus agreed to purchase, certain software and other technology (the "Technology") designed to permit companies to display advertisements on digital screens located on the campuses of participating colleges and universities. The TPA further provided that S-Tronix would continue maintaining, developing, and providing technical support for the Technology, and that it would not "develop[,] market or otherwise produce a product or technology that competes, directly or indirectly, with the Technology." The TPA obliged In-Focus to pay S-Tronix $200,000 by July 1, 2005, $10,000 monthly from July 2005 through June 2006, $13,333 monthly from July 2006 through June 2007, and $16,666 monthly from July 2007 through June 2008. The agreement specified that In-Focus would be required to make these payments "as long as there has been no breach" of the TPA.

According to the evidence in the record, in or around November 2006 In-Focus began "looking to sell" certain of its assets, including the Technology. Some of the prospective purchasers of the Technology, including defendant Submedia, made inquiries regarding S-Tronix as components of their due diligence investigations. Because these due diligence inquiries were occurring, Spencer Roberts, the CEO of plaintiff S-Tronix, requested of an In-Focus corporate officer that In-Focus make the S-Tronix website – which was at that time hosted on a server under In-Focus' exclusive control – visible to the public on the Internet, so that a demonstration

Page 3 - OPINION AND ORDER

version of the Technology accessible through that website could be shown to candidate purchasers. In-Focus complied, and Roberts thereafter demonstrated the Technology to various interested parties.

On November 30, 2006, at a time when In-Focus was not in arrears as to its payment obligations to S-Tronix, In-Focus' rights and obligations under the TPA were assigned to Submedia. The parties do not dispute that Submedia's rights and obligations under the contract are identical to those that would have been applicable to In-Focus had there been no such assignment. Thereafter, the system administrator with authority to exercise control over the server that hosted the S-Tronix website was at all material times a Submedia employee.

At some time either immediately or shortly following the assignment of rights in the Technology to Submedia, Submedia began failing to make monthly payments as provided in the TPA. From time to time, Submedia tendered partial payments, but it does not appear that Submedia ever brought its account with S-Tronix fully up to date. Submedia last made an installment payment to S-Tronix in or around August 2007. According to evidence in the record, Submedia failed to pay a total of $186,659 in periodic payments due to S-Tronix under the payment provisions of the TPA.

In November 2007, it came to the attention of Submedia CEO Peter Corrigan that the Technology, under the trade name "Wallvue" and accompanied by marketing information, was visible on the internet at the S-Tronix website.[1] Roberts' undisputed testimony is that S-Tronix never received any inquiries from prospective purchasers of the Technology at any material time

---

[1] As noted above, at this time the server hosting the S-Tronix website was under Submedia's exclusive control.

through the S-Tronix website, and that S-Tronix never sold nor attempted to sell the Technology or any competing product to any prospective purchaser. Submedia nevertheless now argues that the presence of the Wallvue marketing information on the internet constituted a breach of S-Tronix' covenant not to "develop[,] market or otherwise produce a product or technology that competes, directly or indirectly, with the Technology," thereby excusing its prior failure to comply with its payment obligations under the TPA.

## ANALYSIS

Where, as here, this court's jurisdiction is premised on the diversity of the parties' citizenship, state substantive law governs the parties' claims. *See*, *e.g.*, *Conrad v. Ace Prop. & Cas. Ins. Co.*, 532 F.3d 1000, 1004 (9th Cir. 2008); *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

Under Oregon, law, a plaintiff in a breach of contract action "has the burden to establish the existence of a valid contract and the breach thereof." *Pendleton Grain Growers v. Pedro*, 271 Or. 24, 28 (1975). In addition, "[t]he rule in Oregon is that a party seeking to recover damages for an alleged breach of contract must plead and prove either substantial performance on his part or a valid excuse for his own failure to perform." *Aurora Aviation, Inc. v. AAR Western Skyways, Inc.*, 75 Or. App. 598, 602 (1985), *citing Wasserburger v. American Scientific Chemical, Inc.*, 267 Or. 77, 82 (1973).

"It is also well established, at least as a general rule, that a breach or nonperformance of a promise by one party to a bilateral contract so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty. . . . Whether a breach is so material as to have such a result is ordinarily a question of fact." *Wasserburger*, 267 Or. at 82 (citations omitted).

Page 5 - OPINION AND ORDER

Notwithstanding the foregoing, however, "[i]t is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." *Public Market Co. v. Portland*, 171 Or. 522, 588 (1942) (citations omitted).

Finally, in Oregon "it is hornbook law that strict and literal, rather than 'substantial,' compliance is required of express conditions." *Ram Development Corp. v. Siuslaw Enterprises, Inc.*, 283 Or. 13, 18 (1978), *citing* 5 Williston on Contracts § 675 (1961).

Here, the evidence establishes the existence of a valid and enforceable contract. Moreover, Submedia's failure to pay $186,659 of its periodic payment obligations under the contract is not in dispute. Accordingly, the only issues before the court are whether the availability on the internet during the effective period of the TPA of marketing information relating to the Technology constituted a breach of S-Tronix' contractual noncompetition obligation, and, if so, whether such breach constituted either material breach of a contractual promise or the breach, whether or not material, of an express condition precedent of Submedia's payment obligations.

The evidence in the record establishes clearly that at all times following the sale of the Technology to In-Focus in June 2005, the S-Tronix website was under the exclusive control of either In-Focus or its successor in interest, Submedia. After June 2005, no S-Tronix employee ever had system administrator privileges for that website. Moreover, the website was made available for public access in November 2006, not for the purpose of marketing the Wallvue technology, but rather for the purpose of assisting potential purchasers of In-Focus' assets (as distinct from purchasers of S-Tronix' products) in conducting due diligence as to the value of In-

Focus' technology and the reliability of its technical support. The record contains affirmative evidence that during the effective period of the TPA the Wallvue technology was not offered for sale through the S-Tronix website, including during the period following November 2006 when In-Focus made the website available for public access, that S-Tronix never solicited any person to purchase the Technology or any competing product following the initial sale to In-Focus, and that no prospective purchaser approached S-Tronix regarding products featured on the s-tronix.com site after November 2006. Submedia offers no evidence to contradict any of the foregoing, but relies, instead, exclusively on the undisputed facts that the website was publicly accessible during the effective period of the TPA and contained promotional information regarding the Wallvue technology.

No trier of fact could reasonably conclude on the basis of the evidence in the record that S-Tronix breached its noncompetition obligation under the TPA. First, the product that was the subject of the promotional materials on the S-Tronix website was not a product *competitive with* the one sold to Submedia's predecessor in interest, but was rather that *selfsame* product. Essentially, to the extent the website can be construed as constituting a marketing effort, the product being marketed was Submedia's, not S-Tronix'. Second, and more critically, there is a complete absence of evidence that S-Tronix sought at any material time to market the Technology (or any similar product) to any third party, through the website or otherwise. Third, it was not S-Tronix which made the promotional materials available on the internet, but rather Submedia's predecessor in interest, and it was not S-Tronix but rather Submedia that thereafter had the authority, ability, and incentive to make the materials unavailable again. Under Oregon law, S-Tronix cannot be held to have breached its obligations in consequence of Submedia's

actions, or those of its predecessor in interest. *See Public Market*, 171 Or. at 588.

Because S-Tronix did not breach its obligations under the TPA, Submedia's failure to comply with its contractual periodic payment obligations was unjustified. S-Tronix' motion for summary judgment is therefore granted, and Submedia's motion for summary judgment is denied.[2]

## CONCLUSION

For the foregoing reasons, S-Tronix' motion for summary judgment (#13) is granted and Submedia's motion for summary judgment (#17) is denied. Submedia is ordered to pay S-Tronix $186,659.00 plus pre-judgment interest at the applicable statutory rate. A judgment will be prepared accordingly.

Dated this 15th day of January, 2009.

    /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

---

[2] Because no reasonable trier of fact could conclude from the evidence in the record that S-Tronix breached its obligations under the TPA, I need not reach Submedia's perhaps novel argument that inclusion of the provision, "The Purchase price shall be paid in the following manner *as long as there has been no breach of the Agreement. . .*" (emphasis supplied) elevated each of S-Tronix' obligations under the contract to the status of express conditions precedent of Submedia's payment obligations. Moreover, because my analysis in no way depends on evidence offered by S-Tronix to show that Submedia sought modification of its payment obligations in or after March 2006, Submedia's informal request that such evidence be stricken from the record pursuant to Federal Evidence Rule 408 is denied as moot.