FILED

JAN 2 8 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

S-TRONIX,

                Plaintiff,

                                                          CV-08-272-PK

                                                          OPINION AND
v.                                                        ORDER

SUBMEDIA, LLC,

                Defendant.

_____

PAPAK, Magistrate Judge:

        S-Tronix filed this action against Submedia, LLC, on March 4, 2008, raising a single

claim for breach of contract. On April 2, 2008, Submedia filed a counterclaim, also for breach of

contract. On November 3, 2008, the parties filed cross-motions for summary judgment, and on

January 21, 2009, this court decided each motion and entered judgment in S-Tronix' favor on

both claims. On February 3, 2009, Submedia moved to alter or amend the judgment against it,

and on April 14, 2009, its motion was denied. Submedia appealed the judgment against it to the

Ninth Circuit on May 13, 2009, and its appeal was dismissed for lack of prosecution on

October 21, 2009.

        Now before the court is S-Tronix' motion (#54) for attorney fees, costs, and prejudgment

interest. I have considered the parties' briefs and all of the evidence in the record. For the

reasons set forth below, S-Tronix' motion is granted, and S-Tronix is awarded its attorney fees in

Page 1 - OPINION AND ORDER

the amount of $29,568.00, costs in the amount of $1,693.08, and prejudgment interest in the
amount of $19,322.00.

## BACKGROUND

I.      **The Parties' Contractual Dispute**

On June 28, 2005, S-Tronix entered into a Technology Purchase Agreement (the "TPA")
with In-Focus Corporation, pursuant to which S-Tronix agreed to sell, and In-Focus agreed to
purchase, certain software and other technology (the "Technology") designed to permit
companies to display advertisements on digital screens located on the campuses of participating
colleges and universities.  The TPA further provided that S-Tronix would continue maintaining,
developing, and providing technical support for the Technology, and that it would not "develop[,]
market or otherwise produce a product or technology that competes, directly or indirectly, with
the Technology."  The TPA obliged In-Focus to pay S-Tronix $200,000 by July 1, 2005, $10,000
monthly from July 2005 through June 2006, $13,333 monthly from July 2006 through June 2007,
and $16,666 monthly from July 2007 through June 2008.  The agreement specified that In-Focus
would be required to make these payments "as long as there has been no breach" of the TPA.  In
addition, the TPA provided that, in the event of any litigation "commenced by either party to
enforce any provision of [the TPA], or by reason of any breach of [the TPA], the prevailing party
shall be entitled to recover reasonable costs and attorneys' fees, both at trial and on appeal."

In 2006, In-Focus was seeking a purchaser for certain of its assets, including the
Technology.  Some of the prospective purchasers of the Technology, including defendant
Submedia, made inquiries regarding S-Tronix as components of their due diligence
investigations.  Because these due diligence inquiries were occurring, Spencer Roberts, the CEO

of plaintiff S-Tronix, requested of an In-Focus corporate officer that In-Focus make the S-Tronix website – which was at that time hosted on a server under In-Focus' exclusive control – visible to the public on the Internet, so that a demonstration version of the Technology accessible through that website could be shown to candidate purchasers. In-Focus complied, and Roberts thereafter demonstrated the Technology to various interested parties.

On November 30, 2006, at a time when In-Focus was not in arrears as to its payment obligations to S-Tronix, In-Focus' rights and obligations under the TPA were assigned to Submedia. The parties do not dispute that Submedia's rights and obligations under the contract are identical to those that would have been applicable to In-Focus had there been no such assignment. Thereafter, the system administrator with authority to exercise control over the server that hosted the S-Tronix website was at all material times a Submedia employee.

At some time either immediately or shortly following the assignment of rights in the Technology to Submedia, Submedia began failing to make monthly payments as provided in the TPA. From time to time, Submedia tendered partial payments, but it does not appear that Submedia ever brought its account with S-Tronix fully up to date. Submedia last made an installment payment to S-Tronix in or around August 2007. According to evidence in the record, Submedia failed to pay a total of $186,659 in periodic payments due to S-Tronix under the payment provisions of the TPA.

In November 2007, it came to the attention of Submedia CEO Peter Corrigan that the Technology, under the trade name "Wallvue" and accompanied by marketing information, was

visible on the internet at the S-Tronix website.[1]  Roberts' undisputed testimony is that S-Tronix never received any inquiries from prospective purchasers of the Technology at any material time through the S-Tronix website, and that S-Tronix never sold nor attempted to sell the Technology or any competing product to any prospective purchaser.  Submedia nevertheless argued that the presence of the Wallvue marketing information on the internet constituted a breach of S-Tronix' covenant not to "develop[,] market or otherwise produce a product or technology that competes, directly or indirectly, with the Technology," thereby excusing its prior failure to comply with its payment obligations under the TPA.

## II.    Procedural History

S-Tronix filed this action March 4, 2008, alleging Submedia's breach of its payment obligations under the TPA.  On April 2, 2008, Submedia filed its counterclaim for breach of contract, taking the position that its conceded nonperformance of its payment obligations, which began in or around December 2006, was excused by S-Tronix' alleged breach of its noncompetition obligations, which, according to Corrigan's testimony, Submedia became aware of in November 2007.  All parties consented to magistrate jurisdiction on October 6, 2008.

On November 3, 2008, the parties filed cross-motions for summary judgment.  On January 21, 2009, this court decided the parties' cross-motions for summary judgment in favor of S-Tronix, ruling that Submedia was in breach of the TPA by failing to make payments required thereunder, and that S-Tronix had not breached its contractual obligations to Submedia. Submedia moved for reconsideration of the judgment against it on February 3, 2009.  I denied

---

[1]  As noted above, at this time the server hosting the S-Tronix website was under Submedia's exclusive control.

Submedia's motion on April 14, 2009.

On April 27, 2009, S-Tronix moved for award of its attorney fees and costs. On May 13, 2009, after opposing S-Tronix' motion for attorney fees, Submedia filed an appeal of the judgment against it to the Ninth Circuit. On August 3, 2009, I stayed further proceedings on S-Tronix' motion for attorney fees, pending resolution of Submedia's appeal.

On August 26, 2009, counsel for Submedia moved to withdraw as Submedia's attorney of record, both in this court and in the court of appeals. In this court, I granted counsel's motion on September 11, 2009. Following counsel's withdrawal, on October 21, 2009, the Ninth Circuit dismissed Submedia's appeal for lack of prosecution.

On November 19, 2009, following a telephonic status conference at which Submedia's principal indicated that Submedia did not intend to seek replacement counsel and did not intend to file further briefing in connection with the parties' attorney fee dispute, I lifted the stay of further proceedings on S-Tronix' motion for attorney fees. That motion is now before the court.

## ANALYSIS

**I.    Plaintiffs' Entitlement to Award of Attorney Fees and Costs**

The TPA contains a provision that:

> if litigation is commenced by either party to enforce any provision of this Agreement, or by reason of any breach of this Agreement, the prevailing party shall be entitled to recover reasonable costs and attorneys' fees, both at trial and on appeal.

Under Oregon law,[2] such attorney-fee provisions are enforceable in favor of prevailing parties. *See* O.R.S. 20.096(1) ("In any action or suit in which a claim is made based on a contract, where

---

[2] In diversity actions such as this one, entitlement to attorney fees is governed by state law. *See Kabatoff v. Safeco Ins. Co.*, 627 F.2d 207, 210 (9th Cir. 1980).

such contract specifically provides that attorney fees and costs incurred to enforce the provisions

of the contract shall be awarded to one of the parties, the party that prevails on the claim, whether

that party is the party specified in the contract or not, shall be entitled to reasonable attorney fees

in addition to costs and disbursements"); *see also, e.g., Wilkes v. Zurlinden*, 328 Or. 626, 631-

634 (1999) (contractual fee-shifting provisions are enforceable).

Here, there can be no question but that S-Tronix was the prevailing party in this action,

and Submedia does not dispute S-Tronix' entitlement to award of attorney fees. "For the

purposes of making an award of attorney fees on a claim, the prevailing party is the party who

receives a favorable judgment or arbitration award on the claim." O.R.S. 20.077(2). S-Tronix

prevailed on both its claim and on Submedia's counterclaim, and received an award of damages

in the amount requested in its complaint. Because S-Tronix was the prevailing party for fee-

shifting purposes, it is entitled to award of its attorney fees and costs reasonably incurred in

litigating this action.

## II.    Attorney Fees

S-Tronix' counsel, Todd S. Baran, requests an award of $33,132.00 in attorney fees, or

compensation for 100.4 hours of attorney time at an hourly rate of $330.00. In support of the fee

petition, S-Tronix offers, *inter alia*, a spreadsheet constituting a summary of Mr. Baran's time

expenditures in connection with this litigation (a total of 90.4 hours in 2008 and 2009), as well as

Mr. Baran's statement that he anticipates expending an additional 10 hours to establish S-Tronix'

entitlement to fees and the reasonableness of the amount requested.

Under Oregon law, courts consider the factors enumerated in Disciplinary Rule 2-106 of

the Oregon Code of Professional Responsibility in determining the reasonableness of a requested

Page 6 - OPINION AND ORDER

attorney fee, namely:

(1)     The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2)     The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3)     The fee customarily charged in the locality for similar legal services.

(4)     The amount involved and the results obtained.

(5)     The time limitations imposed by the client or by the circumstances.

(6)     The nature and length of the professional relationship with the client.

(7)     The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8)     Whether the fee is fixed or contingent.

*Dockins v. State Farm Ins. Co.*, 330 Or. 1, 5-6 (2000), *citing Chalmers v. Oregon Automobile Ins. Co.*, 263 Or. 449, 455 (1972); *see also* D.R. 2-106(B); O.R.S. 20.075(2).  I have analyzed the time records submitted in support of the petition to determine whether, in light of the foregoing factors, the fee request is reasonable.[3]

As a preliminary matter, I note that the second, fifth, sixth, and eighth enumerated factors have no apparent bearing on the reasonableness of the fee requested here, and moreover that the record contains no information as to the second, fifth, or sixth factors.  I consider the remaining factors below.

---

[3]  Submedia does not contest the reasonableness of the time expenditures recorded in S-Tronix' counsel's time records, but rather contests only the reasonableness of the hourly rate requested.

Page 7 - OPINION AND ORDER

A.    **Time and Skill Required and Difficulty of Legal Questions Raised**

Although fundamentally a straightforward contract dispute requiring no extraordinary

expertise to litigate, many questions of fact were vigorously disputed by Submedia, requiring S-

Tronix' counsel to expend more hours in litigating this action than might otherwise have been the

case. Detailed analysis of the time records does, however, reveal a small number of time

expenditures with which it is inappropriate to tax Submedia, specifically time apparently

expended on communications between S-Tronix and Mr. Baran in the course of determining

whether Mr. Baran would be retained to conduct this litigation. These time entries are as

follows:

| | | |
|---|---|---|
| 2/11/2008 | * * *; Email to client re status of evaluation and litigation timeline | 0.9 |
| 2/11/2008 | * * *; Emails to and from client re status | 0.5 |
| 2/13/2008 | Review E-mail from client re resume | 0.1 |

In connection with these time entries, I find it appropriate to deduct 0.8 hours, or one half of the

total time expenditures for February 11, 2008, and all of the time expenditure for February 13,

2008, from the total number of hours for which compensation is requested.

Other than the foregoing, I find that each task recorded in the time records was reasonably

necessary to litigating the merits of this action, and that the time expended in the performance of

each recorded task was reasonable. I therefore find it reasonable to award compensation for 89.6

hours expended in connection with this litigation.[4]

---

[4] I do not, however, find it appropriate to compensate Mr. Baran for the 10 hours
anticipated to be expended in establishing S-Tronix' right to fees, but not actually expended at the
time the petition was filed.

B.    Customary Fee and Attorney Experience

Mr. Baran, is a well-credentialed attorney who had 18-19 years' experience as an attorney at the time he litigated the merits of this action, including a number of years of experience in conducting complex civil tort and commercial litigation. As noted above, Mr. Baran requests that his time be compensated at an hourly rate of $330.

Both parties refer the court to the Oregon State Bar 2007 Economic Survey as evidence of the reasonable hourly rates customarily charged for legal services in this locality by attorneys of Mr. Baran's experience. According to the 2007 Economic Survey, data for which were collected in 2006, in 2006 the median hourly rate for legal services charged by Portland-area attorneys with 16-20 years' experience was $275, with a 25th percentile rate of $200, a 75th percentile rate of $325, and a 95th percentile rate of $387.

An appropriate method for adjusting the foregoing rates for inflation in order to estimate the corresponding rates prevalent in the Portland legal community in 2008 and 2009 is to multiply the 2006 rates times the consumer price index for urban consumers ("CPI-U") for the years in which the fees were incurred, then dividing the resulting quotients by the CPI-U for 2006. I take judicial notice that the United States Department of Labor's Bureau of Labor Statistics has published a CPI-U for the Western states of 205.7 for 2006, 219.646 for 2008, and 218.822 for 2009. On this method, the estimated median hourly rate for legal services charged by Portland-area attorneys with 16-20 years' experience in 2008 would be $293.64, with an estimated 25th percentile rate of $213.56, an estimated 75th percentile rate of $347.03, and an estimated 95th percentile rate of $413.24, and the estimated median hourly rate for legal services charged by Portland-area attorneys with 16-20 years' experience in 2009 would be $292.54, with

an estimated 25th percentile rate of $212.76, an estimated 75th percentile rate of $345.73, and an estimated 95th percentile rate of $411.69.[5]

Mr. Baran thus requests compensation at a rate estimatedly between the median and 75th percentile rates for a Portland-area attorney of his experience. In light of Mr. Baran's experience in complex commercial litigation, a modest premium over the median rate is reasonable. I therefore find it reasonable to order that Mr. Baran's time expended in 2008 and 2009 be compensated at his requested hourly rate of $330.

### C.    Amount Involved and Results Obtained

S-Tronix received a damages award in the amount of $186,659, exclusive of pre-judgment interest. As discussed above, it is reasonable to award S-Tronix attorney fees for 89.6 hours at an hourly rate of $330, or a total of $29,568. This amount is approximately 16% of the damages award S-Tronix received.

The proposed award of $29,568 is not unreasonable in light of the amount at stake in this litigation, particularly given S-Tronix' unqualified success in defeating Submedia's counterclaim and in obtaining a damages award in the amount pled. I therefore do not find that adjustment of the lodestar figure is warranted here. S-Tronix is entitled to an attorney fee award of $29,568.

---

[5] S-Tronix further refers the court to the unofficial survey conducted by Serena Morones in 2004, which calculated an average hourly rate for Portland attorneys with 10-19 years of experience in that year of $272. I take judicial notice that the United States Department of Labor's Bureau of Labor Statistics has published a CPI-U for the Western states of 193.0 for 2004. Using the same method for adjusting the 2004 rate for inflation outlined *supra* yields an estimated average hourly rate for Portland attorneys with 10-19 years of experience of $309.55 in 2008 and $308.39 in 2009. This rate is somewhat higher than, but comparable to, the rates derived from the 2007 Economic Survey data.

Page 10 - OPINION AND ORDER

III.    **Costs**

In addition to its attorney fees, S-Tronix claims $1,693.08 in costs that it characterizes as compensable. Submedia makes no objection to these costs. On analysis, I find the claimed costs to be reasonable, and therefore award S-Tronix its costs in the amount of $1,693.08.

IV.    **Prejudgment Interest**

S-Tronix requests prejudgment interest in the amount of $19,322.00, constituting interest calculated at the statutory annual rate of 9% (*see* O.R.S. 82.010(2)) on each scheduled payment that Submedia failed to pay under the TPA. Submedia makes no objection to the payment of prejudgment interest in this amount.

Under Oregon law, the prevailing party in a contract dispute is entitled to prejudgment interest "on unliquidated damages . . . where (1) the exact amount of damages is either ascertained or readily ascertainable, and (2) the time from which the interest runs is easily ascertained." *Krieg v. Union Pacific Land Resources Corp.*, 269 Or. 221, 234 (1974) (footnote omitted). Facts sufficient to state a claim for prejudgment interest must, however, be specifically pled in the plaintiff's complaint, and a specific request for prejudgment interest must be pled in the prayer of the complaint, before prejudgment interest may be awarded. *See Emmert v. No Problem Harry, Inc.*, 222 Or. App. 151, 158 (Or. App. 2008).

Here, both foundation and request were specifically pled in the complaint, and both the precise amount of the missed payments and the dates on which the payments were due are readily ascertainable from the provisions of the TPA. Analysis of S-Tronix' submissions reveals no error or impropriety in the calculation of the amount of interest to which S-Tronix is entitled. I therefore award S-Tronix prejudgment interest in the amount of $19,322.00.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion (#54) for attorney fees, costs, and prejudgment interest is granted, and Submedia is ordered to pay S-Tronix' attorney fees in the amount of $29,568.00, costs in the amount of $1,693.08, and prejudgment interest in the amount of $19,322.00.

Dated this 28th day of January, 2010.

Honorable Paul Papak
United States Magistrate Judge